UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

**DECISION AND ORDER**
12-CR-125S

v.

RAYMOND MALIZIO,

                    Defendant.

---

**I.    INTRODUCTION**

      Pending before the Court is a motion (Dkt. No. 121) by defendant Raymond Malizio for reconsideration of his detention status. Defendant has been in continuous federal custody since his arrest on May 5, 2013 in the Eastern District of New York. In support of reconsideration, defendant argues that his circumstances have changed with respect to the availability of a suitable residence. Specifically, defendant argues that he has a daughter-in-law in Florida who would be willing to host him in her apartment with her daughter and would be willing to sign what apparently would be a signature bond despite limited financial resources. Defendant combines the availability of a suitable residence with arguments that he played no more than a minor role in the alleged conspiracy and that, given his minor role, he should not have to remain in custody for the several years that this "mega case" likely will need to proceed to trial.

The Government opposes reconsideration for several reasons. The Government disputes defendant's effort to downplay the role that he allegedly played in the conspiracy, proffering that he was a salesman who interacted directly with investors and indicated through e-mail correspondence that he knew the fraudulent nature of the investments in question. The Government further notes that defendant visited the United States frequently while living abroad, until it unsealed the indictment; the sudden end to those visits after the unsealing suggests intent to avoid arrest. Finally, the Government objects to the tenuous nature of the proposed residence and defendant's ties to his daughter-in-law, especially given that the daughter-in-law does not even own the apartment that would be the residence. The United States Probation Office ("USPO") recommends continued detention.

The Court held a bail review hearing and follow-up status conferences on September 12, 19, and 24, 2013. For the reasons below, the Court denies defendant's motion.

## II. BACKGROUND

This case concerns allegations that defendant and others ran a transatlantic telemarketing scam that duped more than 250 investors into buying restricted stock at unrestricted stock prices, for a total injury of over $5 million. The indictment, filed on April 17, 2012, contains numerous counts and forfeiture allegations against a total of 12 defendants, four of whom remain at large.

2

Defendant appears only in Count One, in which the Government accuses him and others of conspiring to commit wire fraud in violation of 18 U.S.C. § 1349. The indictment contains numerous details about how the entire alleged scam operated, but the following information suffices as a brief summary:

> The defendants procured nearly worthless restricted shares of over-the-counter penny stock, and sold that stock at inflated prices to investors through the boiler room located in Spain.
> The defendants utilized a high pressure sales pitch made to investors containing false and fraudulent representations and omissions, including, among other things, not telling investors that the stock being sold was restricted stock; that the investors were directed to web sites which showed stock prices for freely traded stock, not the less valuable restricted stock actually provided; directing investors to look at fictitious and highly optimistic press releases which had been created for the boiler room in order to make the particular stock appear valuable.
> After investors purchased the stock, defendants directed the investors to send their payment, by international wire, to bank accounts in Canada, the United States and elsewhere.
> After receiving payments from the investors for the worthless stock, which in total amounted to more than $5,000,000, the defendants shared the profits from the conspiracy.

(Dkt. No. 1 at 7–8.) As for overt acts in furtherance of the conspiracy, the Government in the indictment asserts that defendant and others "made sales calls to investors to induce them to purchase shares of various stocks." (*Id.* at 9.)

The Government needed over a year after the filing of the indictment to locate defendant and to bring him into federal custody. Prior to his arrest, defendant had not lived in the United States for a number of years. Defendant appears to have lived in Barcelona, Spain for approximately three years, from

3

around 2005 through around 2008. Defendant appears to have told the USPO in the Eastern District of New York that he lived in Panama City, Panama with his fiancée for the five years preceding his arrest, which would place him in Panama approximately around 2008 into 2013. During his time in Spain and later in Panama, defendant visited the United States at least several times. None of defendant's visits post-dates the filing of the indictment on April 17, 2012. In fact, defendant allegedly called law enforcement officials on September 28, 2012 and mentioned, among other things, that he was aware of the indictment. During that communication and a subsequent communication with law enforcement on October 4, 2012, defendant refused to surrender voluntarily. Eventually, law enforcement found defendant in Panama and arranged for his expulsion from that country and for his return to the United States in May 2013. On May 5, 2013, defendant arrived at John F. Kennedy International Airport in New York City and was taken into custody. After proceedings in the Eastern District of New York pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure, defendant appeared in this District for arraignment on May 23, 2013. On May 30, 2013, the Court held a detention hearing, during which defendant decided not to challenge the Government's motion because he had no residence in the United States. Defendant reserved the right to apply for a reconsideration of bail in the future. The Court reviewed the bail factors set forth in 18 U.S.C. § 3142(g) and ordered defendant detained as a flight risk.

Defendant filed the pending motion for reconsideration of bail on August 12, 2013.  Primarily, defendant points to a change of circumstances in that he now has a residence in Florida that he can submit for consideration.  Specifically, defendant wants to live with his daughter-in-law, Madeline Van Epps, and her daughter in their apartment in DeLand, Florida.  The USPO has spoken with Ms. Van Epps by telephone.  Ms. Van Epps is enlisted in the United States Coast Guard and is enrolled in an unspecified nursing program.  Although she is absent from the apartment when discharging her Coast Guard duties and lacks financial resources to post bail, Ms. Van Epps apparently would be willing to host defendant and to sign a signature bond.  The USPO in the Middle District of Florida would supervise defendant if the Court ordered release, though defendant apparently does not qualify for "courtesy supervision" in that district.  How much communication defendant has had in the last 10 years with Ms. Van Epps and other family members is not clear; defendant appears to have maintained some communication with various family members, though tensions in the family over the years limited the communication.  As for other factors related to reconsideration, defendant's fiancée in Panama never appeared to support defendant and has not been contacted or referenced in any proceedings. Defendant concedes that he has bipolar disorder and that he has maintained sobriety for 12 years; defendant concedes also that he has led what he described as an "interesting" life that includes numerous theft-related arrests and

5

convictions in Pennsylvania between 1980 and 2001.  Nonetheless, defendant asserts that some combination of conditions of release is possible here and that he will be able to find work in Florida.  Defendant argues that finding a suitable combination of conditions is important because he is, at most, a minor player in the alleged conspiracy, while the other defendants have major roles and will spend years litigating in a case that has received "mega case" status.  According to defendant, if he does not receive some kind of release then he faces the possibility of spending more time in pretrial custody that he would serving what his sentence likely would be upon conviction.

     The Government opposes release for several reasons.  Substantively, the Government disputes defendant's attempts to downplay his role in the alleged conspiracy.  The Government asserts that defendant, while perhaps not the mastermind of the entire conspiracy, played a critical role as one of the salesmen who had direct contact with investors and actually induced them to buy stock.  The Government further accuses defendant of intentionally avoiding arrest for months after learning of the indictment by ending his visits to the United States and remaining abroad.  The Government points to this intent as a reason to worry that defendant will attempt to flee if given a chance to do so.  As for changed circumstances, the Government questions whether the proposed living arrangements are stable enough for release.  Because of his years of living abroad, according to the Government, defendant has ties neither to this District

6

nor to Florida and appears not to have strong connections to his family. Ms. Van Epps does not own the proposed residence, leaves it regularly when serving the Coast Guard, and has no financial resources to post bail. In fact, the Government argues, no one has come forward to post any bail beyond a signature bond. Under these circumstances, the Government considers release too risky.

## III. DISCUSSION

"The Eighth Amendment to the Constitution states that '[e]xcessive bail shall not be required.'" U.S. Const. amend. VIII. Consistent with this prohibition, 18 U.S.C. § 3142(b) requires a court to order the pre-trial release of a defendant on a personal recognizance bond 'unless the [court] determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community.'" *U.S. v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Statutory factors to be considered when assessing flight or danger include the nature and circumstances of the offense charged, the weight of the evidence against the person, the history and characteristics of the person, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g).

With respect to flight risk, "the government carries a dual burden in seeking pre-trial detention. First, it must establish by a preponderance of the evidence

7

that the defendant, if released, presents an actual risk of flight. Assuming it satisfies this burden, the government must then demonstrate by a preponderance of the evidence that no condition or combination of conditions could be imposed on the defendant that would reasonably assure his presence in court." *Sabhnani*, 493 F.3d at 75 (citations omitted). "To order detention, the district court must find, after a hearing, that the government has established the defendant's dangerousness by clear and convincing evidence. The rules of evidence do not apply in a detention hearing. Further, the government may proceed by proffer." *U.S. v. Ferranti*, 66 F.3d 540, 542 (2d Cir. 1995) (citations omitted).

Once the Court has issued a detention order in the manner set forth above, it may reconsider that order and reopen the detention hearing "at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). "New and material information for Section 3142(f)(2)(B) purposes consists of something other than a defendant's own evaluation of his character or the strength of the case against him: truly changed circumstances, something unexpected, or a significant event." *U.S. v. Jerdine*, No. 1:08 CR 00481, 2009 WL 4906564, at *3 (N.D. Ohio Dec. 18, 2009) (citation omitted). Where evidence was available to defendant at the time of the

hearing, the hearing will not be reopened. *See U.S. v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991); *U.S. v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989).

Here, the Court has been willing to review defendant's efforts to establish a suitable residence as a change of circumstances from when he had no residence at all to propose. Defense counsel has done an admirable job presenting defendant's life history and alleged role in the conspiracy as favorably as possible. Nonetheless, defendant's proposed arrangements simply are too tenuous. While defendant appears to have maintained some communication with his daughter-in-law over the years, he has not asserted that any of his visits to the United States since living abroad included seeing her. No one in defendant's family owns the proposed residence, and no one in his family has offered to post any assets as part of a bail package. *Cf. U.S. v. Miranda*, 442 F. Supp. 786, 790 (S.D. Fla. 1977) ("Had members of the defendant's family come forward to testify in his behalf at the bond hearing, this court might have been more seriously impressed with defendant's claim of substantial family ties. But absent this occurrence, this court deems defendant's actions with regard to his family to be a factor which does not militate in his favor."). Defendant's itinerant nature in recent years heightens the Court's concern that no one is willing to post assets. *Cf. U.S. v. Bobbitt*, No. 09-CR-331, 2013 WL 3049167, at *6 (W.D.N.Y. June 17, 2013) (Scott, *M.J.*) (citing "unstable residences" among factors supporting a finding of flight risk); *U.S. v. Yamini*, 91 F. Supp. 2d 1125, 1131 (S.D. Ohio 2000)

9

("Defendant has family in other states, tenuous ties to this community, and is unemployed currently. Under all of these circumstances, there is a risk of flight."). The absence of any mention of defendant's fiancée in Panama is mysterious; the Court has no idea who this woman is, where she is, and why she apparently has wanted nothing to do with defendant since his expulsion from Panama. *Cf. U.S. v. Jones*, No. 06–20343, 2011 WL 6300957, at *2 (W.D. Tenn. Dec. 16, 2011) ("Although Jones was originally from Western Tennessee, he has not lived here for several years and was arrested in California, where his girlfriend resides."); *U.S. v. Wahler*, No. 1:08CR55-V, 2009 WL 159385, at *2 (W.D.N.C. Jan. 21, 2009) ("The pretrial services report reveals that Defendant also has an unstable residence and was less than forthcoming with the investigating pretrial services officer."). Meanwhile, defendant faces serious charges of helping to defraud over 250 investors of over $5 million. Without infringing on the presumption of innocence, the alleged conspiracy began around 2006; given that the last arrest in the pretrial services report occurred in 2001, defendant since 1980 has never spent more than a few years without an accusation of criminal activity. Finally, while defendant has offered some explanation for the delay between the filing of the indictment and his appearance in this District, he cannot explain away that he probably would still be at large but for his discovery in and expulsion from Panama. Under these circumstances, the Court finds defendant's circumstances

too unstable to create a reasonable chance at appearance of future proceedings under any combination of release conditions.

As for defendant's concern about the time that this "mega case" will take to proceed to trial, the Court notes briefly that a due-process analysis is available if excessive length of detention becomes a problem later.

## IV. CONCLUSION

For all of the foregoing reasons, the Court denies defendant's motion for reconsideration of bail (Dkt. No. 121). Defendant shall remain in custody pending trial.

Defendant shall remain committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

Despite the Court's order of detention, defendant shall be afforded reasonable opportunity for private consultation with counsel. Additionally, on order of the Court or on request of an attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding in this case.

In accordance with 18 U.S.C. § 3142(j), nothing in this Decision and Order shall be construed as modifying or limiting the presumption of innocence.

SO ORDERED.

                                                                                          /s Hugh B. Scott
                                                   HONORABLE HUGH B. SCOTT
                                                   UNITED STATES MAGISTRATE JUDGE

DATED: October 15, 2013